UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**CONSTRUCTION AND GENERAL
LABORERS' LOCAL UNION NO. 330**

    Plaintiff,

    v.

**TOWN OF GRAND CHUTE, WISCONSIN,**

    Defendant.

## DECLARATION OF KELLY BUSS

The undersigned declares as follows:

1. My name is Kelly Buss. I am a business agent for Laborers Local 330 and I also serve as the local union's president. I have been employed in this capacity since July 2009.

2. Among my duties is to monitor construction work being performed in the geographical jurisdiction of Local 330. Laborers' Local 330 and its members are adversely affected where construction work is performed at less than the area standard wages and benefits. Such work erodes the standards that the union maintains for covered work in the area.

3. During the week of March 28th, we became aware that Pahlow Masonry (hereafter "Pahlow") was being used to perform the types of work performed by Local 330 and its members. They were performing work on an expansion of Kolosso Automotive's car dealership at 2801 W. College Avenue in Grand Chute, Wisconsin (hereafter "the Site.").

4. In the past, we have determined that Pahlow pays substantially less in wages and benefits than the area standard wages and benefits recognized by Local 330 as appropriate area standards. Based on our investigation into Pahlow, we have determined that Pahlow pays substandard wages and benefits.

5. To publicize the use of a substandard contractor on the Kolosso project, the Union decided to engage in area standards picketing. This is not picketing for the purposes of seeking recognition from Pahlow, but to publicize the fact that Pahlow is not paying the area standards.

6. In preparation for the protest, I identified the location of the Site on a map and identified the location as being within the Town of Grand Chute. On or about March 28th, I called the Grand Chute police department and asked to speak with the officer concerning the planned area standards picketing.

7. On Saturday March 29th, I met with Sgt. Randy Reifsteck of the Town of Grand Chute Police Department at the Site at 2801 W. College Avenue. Sgt. Reifsteck and I discussed the location of the right of way and where Local 330 could engage in its protest.

8. On Monday March 31st, the union began area standards picketing at 2801 W. College Avenue. It located such picketing on the median between the West College Avenue service road and West College Avenue.

9. Along with me, were between 5 to 10 other picketers. Our signs stated that "Our Dispute Concerns Only the Substandard Wages and Benefits Paid by Pahlow" and which identified Laborers Local 330 as the party engaging in the protest. A picture of the sign is attached hereto as Exhibit A.

10. In addition to the area standards picket signs, we also inflated a large inflatable rat balloon. To prevent the balloon from blowing away, we tethered the balloon to the ground. A picture of the inflatable rat is attached hereto as Exhibit B.

11. The rat balloon is not intended as a permanent fixture or sign. The balloon is removed at the end of each day and is not inflated when protestors are not present. The rat is an essential part of our protest.

12. On Tuesday April 1st, we continued with our area standards picketing. On that date, Eric Thiel, who performs code enforcement for the Town of Grand Chute, approached us on the Site. He indicated that the inflatable rat was a sign which did not comply with the Town's sign ordinances. At his insistence, we temporarily deflated the rat.

13. Following Thiel's demands, we again reached out to Sgt. Reifsteck. Sgt. Reifsteck told us that since the sign was for a non-commercial purpose, and that the rat could be reinflated. The rat was deflated for about an hour.

14. On the morning of April 3rd, we were approached on the Site by Kurt Craanen, code enforcer for the City of Appleton. Crannen indicated that the median was located in the City of Appleton and not Grand Chute. He indicated that the rat balloon violated Appleton's sign ordinances and asked that it be removed.

15. We had previously discussed the location of the area standards picketing with the Town of Grand Chute. After Crannen objected to the use of the rat, we relocated the rat to the Grand Chute side (south side) of the West College Avenue service road. This was directly in front of the Kolosso construction site. Pictures of the rat in this location are attached hereto as Exhibit C.

16. We did not picket or inflate the rat on Friday, April 4th.

Page **3** of **5**

Case 1:14-cv-00455-WCG    Filed 04/21/14    Page 3 of 5    Document 4

17. On April 7th, we again inflated the rat on the median between the service road and College Avenue. That afternoon, Sgt. Reifsteck again approached us. At that time, he informed us that the inflatable rat violated state statutes regarding highway signs and a town ordinance concerning such signs. He provided us with copies of both the state statue and the Town's ordinance. In response to such complaint, we again deflated the rat balloon.

18. In his discussion with us, Sgt. Reifstack indicated that the Town's basis for having the union remove the rat was that it violated state and municipal regulations governing the posting of signs. However, he indicated that the rat, if properly secured, could be placed on a flatbed truck or in the bed of a pickup truck. The mobile rat could then be transported around the construction site, provided that it was mobile.

19. During his conversation with us, Sgt. Reifstack also mentioned that one of the reasons that he was asking us to take down the rat was an article which appeared in the Appleton Post-Crescent over the prior weekend. A copy of the article is attached hereto as Exhibit D.

20. The inflatable rat has a very clear meaning in the labor context. When we inflate the rat at a work site, we wish to communicate to the public that the business we are protesting is not paying its employees adequate wages and that the contractor fails to treat its employees fairly. The rat communicates this message more clearly and effectively than our area standards picket signs alone. Without the rat we have a difficult time connecting with our audience.

21. To emphasize our message about treating workers fairly, on April 3rd and April 7th, we also inflated a second balloon. The balloon depicts a cat wearing a business suit and strangling a construction worker. This further reinforces the message that namely that Pahlow was not paying area standards or treating its workers fairly. A picture of the Fat Cat balloon is attached hereto as Exhibit E.

22. It is important for the union to place the rat as close as possible to the location where that the contractor, in this case Pahlow, is performing work. We try to narrowly target the rat to the site of the dispute, so as not to put the rat in front of contractors who treating their employees fairly or paying them the area standard. The further away we get from where Pahlow is performing work the harder it is to target the rat to Pahlow. Where the rat is located away from the construction site, it loses its meaning and fails to target the correct audience.

23. After Sgt. Reifsteck suggested making the inflatable rat mobile, I discussed this option with Mark Linsmeier, organizer, and Tony Marcelle, Local 330's business manager. Mr. Marcelle indicated that circling the block with the rat would not work, since there are other businesses in the block that would be unfairly impacted.

24. While engaging in area standards picketing on West College Avenue, both on the median and on the service road, we were very mindful to place the rat in a location where it would not interfere with traffic flow or impede traffic. At no time, did our use of the rat block traffic nor did we encourage any traffic stoppage. As reflected in the pictures attached as Exhibit B, the location of the rat was in the middle of the block and not immediately adjacent to any intersections.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I have personal knowledge of the facts contained herein and, if called upon to testify, I could and would competently testify thereto.

Dated this 17th day of April 2014.

/s/ Kelly Buss

Kelly Buss