# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CONSTRUCTION AND GENERAL
LABORER'S LOCAL UNION NO. 330,

    Plaintiff,                                                                     Case No. 14-C-455

    v.

TOWN OF GRAND CHUTE,

    Defendant.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Construction and General Laborer's Local Union No. 330 brought this action under 42 U.S.C. § 1983 against the Town of Grand Chute for violating the Union's rights under the First and Fourteenth Amendments of the United States Constitution, as well as similar provisions of the Wisconsin Constitution. The Union also claims the Town's conduct violates Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, which recognizes the right of employees to organize and engage in collective bargaining. In essence, the Union claims that the Town violated its right to free speech by ordering it to remove a giant inflatable rat from the public right-of-way adjacent to a construction site where a masonry contractor who pays sub-standard wages is employed. The rat is apparently a symbol of labor unrest, and the Union deploys it, along with picketers, to communicate its message to the public that the business its members are picketing is not treating its employees fairly. The Union also uses a giant inflatable cat to convey a similar message. The "fat" cat is displayed wearing a business suit and is strangling a construction worker. The Town ordered the Union to remove the inflatable rat and cat from the Town's right-of-way because they

are in violation of the Town's sign ordinance. The case is before on the Union's motion for a preliminary injunction. For the reasons that follow, the motion will be denied.

## I. Background

Article XV of Chapter 535 of the Town's ordinances governs signs and billboards. The purpose of the article is "to establish standards to safeguard life and property and promote public welfare and community aesthetics by regulating the appearance, construction, location and maintenance of all signs and billboards." Ordinance § 535-104 (ECF No. 2-1.) The ordinance defines a "sign" as "[a]ny structure, part thereof, or device attached thereto or painted or represented thereon which displays or includes any numeral, letter, word, model, banner, emblem, device, trademark or other representation used as, or in the nature of, an announcement, advertisement, direction or designation of any person or thing in such a manner as to attract attention from outside of the building." § 535-105. The ordinance then proceeds to forbid all signs on public rights-of-way except for traffic-related signs. "Signs shall not be permitted on public rights-of-way except for traffic control, parking and directional signs and as otherwise specified in this section." § 535-106C.

The Union began picketing at the cite on March 31, 2014. In addition to the picket signs, which its members carried, the Union placed its large inflatable rat on a grassy area within the public right-of-way. To prevent it from blowing away, the inflatable rat was tethered to the ground with several stakes. A portable air compressor was also attached to the rat to keep it inflated. The inflatable rat and cat are depicted in photos attached to the Declaration of Kelly Buss. (ECF No. 4.) The inflatable balloons were not left at the site when Union members were not present. At oral

argument, counsel for the Union explained that picketing was done at the site for only a couple of hours in the morning and then in the afternoon. The rat and/or cat would be deflated and taken away over lunch and when picketing was done for the day.

## II. Analysis

"A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted." *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). "If the moving party can satisfy these conditions, the court must then consider any irreparable harm an injunction would cause the nonmoving party." *Id.* "Finally, the court must consider any consequences to the public from denying or granting the injunction." *Id.* "Sitting as a court of equity, the court then weighs all these factors employing a sliding-scale approach." *Id.* In this case, the court concludes that the Union has failed to demonstrate a likelihood of success on the merits and thus finds no need to address the remaining factors.

There is no doubt that the Union's use of the inflatable rat and cat is expressive conduct within the meaning of the First Amendment. Courts have recognized that the use of an inflatable rat as part of a labor protest is protected, symbolic speech under the First Amendment. *See Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 462 (6th Cir. 2005) (citing *Int'l Union of Operating Eng'rs, Local 150 v. Village of Orland Park*, 139 F. Supp. 2d 950, 958 (N.D. Ill. 2001) ("We easily conclude that a large inflatable rat is protected, symbolic speech.")). There is also no doubt that the inflatable objects constitute signs within the meaning of the ordinance. They are structures used as an announcement and are intended to attract attention. Specifically, in defining signs as

"structures," or devices attached to or painted on structures, the ordinance appears merely to prohibit the creation of free-standing, constructed, or built-up signs on public rights-of-way. A structure, in its simplest terms, is "something (as a building) that is constructed;" "something arranged in a definite pattern of organization." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 1167 (10th ed. 1999). The Town does not contend that this definition would encompass an individual standing on the right-of-way merely holding a sign in his hands, as there is no "structure" in that picture. Similarly, the ordinance would not rightly be applied to an individual who, in holding a sign, rested the bottom edge of that sign on the ground. Again, there is no structure present, nothing of the sort of a free-standing nature denoted by the term "structure". On its face, then, the ordinance prohibits the Union's placing the inflatable rat and cat on the public right-of-way.

A plaintiff may show that a law is facially unconstitutional if he shows either (1) it is unconstitutional in every conceivable application, or (2) it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). A governmental entity may impose reasonable restrictions on the "time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The plaintiff argues that, by excepting traffic-related signs from the ordinance's scope, the ordinance itself is favoring some forms of speech at the expense of others and is thus not content-neutral. I am unpersuaded, however, that "traffic control, parking and directional signs" are the sort of "content" or "viewpoints" protected by the First Amendment. That is, a stop sign is not

expressing any kind of speech or viewpoint any more than a sign reading "No Left Turn" is. Thus, the ordinance's exception for such signs does not impermissibly favor any actual viewpoints at the expense of others.

Moreover, "[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. Here, there is no indication that the ordinance was adopted because the town disagreed (or agreed) with any particular messages about any subject whatsoever. They simply sought to prohibit all signs, while reserving the ability to post traffic-related signs, a rather pressing need for any municipality.

The ordinance is also narrowly tailored to a significant government interest. It applies to all signs placed in the public right-of-way, but only applies to signs that are placed on or are themselves structures. Because the ordinance only applies to such structures, the First Amendment's protection of the individual picketer or protester would not be compromised. In *Members of the City Council v. Taxpayers for Vincent,* the Supreme Court upheld a city ordinance prohibiting the posting of all signs on public property. 466 U.S. 789. Individuals in Los Angeles wishing to express a viewpoint could still carry signs, distribute pamphlets and communicate verbally in order to convey their message. As such, the ordinance did not burden more speech than was necessary to accomplish the city's goal of better aesthetics. I also note that the posting of free-standing signs on public, rather than private, property is not a traditional means of expressing protected speech. *See Foti,* 146 F.3d 629, 640 (9th Cir. 1998) ("There are obvious differences between a sign posted and left unattended for several weeks and a picket sign carried by a protestor.") Indeed, an ordinance allowing any and all signs to be posted on public rights-of-way

could lead to government subsidized advertising space, causing distraction and clutter, both of which a municipality has the right to prohibit.

The Union suggests that because it deflates and removes its props at night and when its members are not picketing, the Town has no interest in prohibiting their use. In the Union's view, the Town could narrowly tailor its ordinance so that it would not apply to such non-permanent devices and still accomplish its purposes of safeguarding life and property and promoting public welfare and community aesthetics. This was essentially what the Sixth Circuit held in *Tucker* in affirming the district court's decision granting a preliminary injunction under a similar circumstances:

> There is no objective evidence in the record before us suggesting that the temporary placement of the balloon in the public right-of-way has any adverse effects, such as obstruction of pedestrian or automobile traffic. By applying the ordinance to prohibit the temporary use of the balloon in this case, it therefore appears that the City has applied its ordinance in a manner that is "substantially broader than necessary" to achieve its interests.

398 F.3d at 464.

In reaching this conclusion, however, the Sixth Circuit applied the wrong test. As Judge Kennedy explained in dissent, the Court applied the "least restrictive alternative" test instead of the "narrowly tailored" test. Quoting the Supreme Court's decision in *Ward*, Judge Kennedy explained:

> "So long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . , the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 800. Thus, the Court has indicated that, in this context, the narrowly tailored test is a far more lenient test than a least restrictive means test. *Id.* Indeed, some amount of overinclusiveness is permissible provided that the evil targeted by the statute is permissible. *See id.* (The Court indicates that "the . . . regulation may [not] burden substantially more speech than is necessary" indicating that some overinclusiveness may be permissible).

398 F.3d at 467 (Kennedy, J., dissenting).

It is also clear that attempting to carve out an exception for temporary moveable structures like the Union's props would pose significant problems. For example, the Union contends in this case that it only seeks to place its props at the cite for a couple hours each day while its members are picketing. But what if the Union or some other party wishes to man its picket lines around the clock? Can the Town limit the amount of time the structure can be placed on its land even when Union members are present? A second problem is the size of the structure. The rat in this case appears to be fifteen feet in height. What is a reasonable size? How many inflatable objects or other structures does the Town have to permit? These are the kind of issues that no doubt will arise if the Town attempts to carve out a narrow exception for the Union. Obviously, the Town's ban on signs on public rights-of-way is an attempt to maintain its public rights-of-way in an uncluttered condition without subjecting its taxpayers to lawsuits from disgruntled parties who believe they were improperly denied a permit to place their particular sign on the public right-of-way. It is narrowly tailored to achieve this purpose.

The Town's ordinance leaves open alternative methods for the Union to communicate its message, including through the use of its chosen image. Union members remain free to picket the site with handheld signs that bear depictions of rats or cats. They can wear costumes, place a rat figure on the top of their cars or in truck beds. They can hand out leaflets conveying their message. These and other means of communicating its message remain available. In short, citizens have the right to communicate speech, in person, via handbills, signs or slogans, but they do not necessarily have an unfettered right to place structures or free standing signs on public property. Accordingly, given the town's significant interest in traffic safety, and given that the town's content neutral ordinance forbids only structural signs while leaving open ample other avenues of communication, I find that the ordinance, as interpreted above, is constitutionally sound.

Finally, I note that the Union also argued that the Town had discriminated in its enforcement of its ordinance. It submitted photos purporting to show other signs that were located in the right-of-way in violation of the Town's ordinance. (Decl. of Mark Linsmeier, ¶¶ 6-8, ECF No. 5.) The Union also claimed that the Town did not act until the Union activity was reported in the local media. These facts, the Union argued, demonstrated that the Town was discriminating against the Union's message.

The court does not agree. As the Town explained, all but one of the photos submitted by the Union depict signs on private property or outside of the Town's jurisdiction. The one violation that was shown was not known to the Town at the time. Upon learning of it, the Town has directed the owner to remove the sign. This is not evidence of discriminatory enforcement. Nor is the fact that the Town did not make its final decision until after a newspaper article appeared on the issue. The Union had been told even before the article appeared to remove the objects. After the Union's attorney became involved, the Town sought legal advice of its own before making its final decision. The Union offered no evidence to support its assertion that the Town was somehow motivated by the content of its message. Of course, if such evidence surfaces later, the Union may renew its motion. On the record as it now stands, however, the court finds that the Town has not enforced its ordinance in a discriminatory manner.

## III. Conclusion

Accordingly and for the reasons stated above, the court finds that the Union has failed to show that it has a reasonable likelihood of success on the merits. The Town's ordinance is facially

valid and has not been enforced in a discriminatory manner.  The Union's motion for a preliminary injunction is therefore denied.

Dated at Green Bay, Wisconsin this   29th   day of April, 2014.

                                          BY THE COURT

                                          s/ William C. Griesbach
                                          William C. Griesbach, Chief Judge
                                          United States District Court